**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Claudette Roberts, | : | Case No. 3:07 CV 2642 |
| Plaintiff, | : | |
| v. | : | |
| Lucas Metropolitan Housing Authority, | : | **MEMORANDUM DECISION AND ORDER** |
| Defendant. | : | |

Plaintiff's complaint alleging a violation of the Fair Housing Act, was filed pursuant to 42 U.S.C. § 3601. Upon consent of the parties, the case was transferred to the undersigned Magistrate Judge for final disposition. Pending is Defendant's Motion to Dismiss with supporting Memorandum (Docket No. 29) to which Plaintiff filed a Reply (Docket No. 30). Both parties filed further Memoranda (Docket No. 31 & 34). For the reasons that follow, the Motion to Dismiss is granted.

## THE PARTIES

Plaintiff, formerly a resident in Lucas County, Ohio, is now a resident of Atlanta, Fulton County, Georgia (Docket No. 1, ¶ 1). Defendant, a metropolitan housing authority, is a political subdivision created pursuant to OHIO REV. CODE § 3725.27 et. seq., to provide safe and sanitary housing accommodations to families of low income.

## FACTUAL BACKGROUND

Plaintiff, leased pursuant to written agreement with Defendant, premises located at 6056 Douglas Road, Toledo, Lucas County, Ohio (Docket No. 28, ¶ 7). In April 2005, the basement of the leased premises flooded (Docket No. 28, ¶ 8). Defendant contracted with Emzie Wilson to make the necessary electrical repairs in the basement (Docket No. 28, ¶ 9). During the course of performing the repairs, Emzie Wilson allegedly sexually assaulted Plaintiff (Docket No. 28, ¶ 11). Plaintiff made a police report immediately (Docket No. 28, ¶ 120. On March 9, 2006, Emzie Wilson was found guilty and placed on "active probation" commencing June 21, 2006 (Docket No. 12, Exhibit 3, pp. 2/3 & 3/3).

In the meantime, Plaintiff was approved for a residential transfer and notified that she had to vacate the Douglas Road premises forthwith (Docket No. 12, ¶ 13). Plaintiff could not move within the prescribed time and on or about November 1, 2005 she declined the transfer (Docket No. 12, ¶ 14). In June 2006, the basement of her residence flooded again (Docket No. 28, ¶ 16). The Federal Emergency Management Agency (FEMA) advised Plaintiff on July 18, 2006, that it was necessary that she needed to move due to the unsafe conditions of the home (Docket No. 28, ¶ 17). Approximately a week later, Plaintiff requested a hearing with Defendant to discuss the FEMA mandate (Docket No. 28, ¶ 18). The meeting scheduled on August 2, 2006 was cancelled (Docket No. 1, ¶ 10; Docket No.28, ¶ 20). Before Plaintiff could remove all of her possessions from the house, Defendant changed the locks, served Plaintiff with a Notice to Vacate and assessed a balance due of unpaid rent (Docket No.28, ¶s 21, 22 & 23). Plaintiff claimed that she was left homeless as a result of Defendant's actions (Docket No.28, ¶ 24).

## **PROCEDURAL BACKGROUND**

On December 28, 2006, Plaintiff filed a charge with the Department of Housing and Urban Development (HUD) alleging gender discrimination, retaliation, constructive eviction and denial of due process (Docket No. 12, Exhibit 2, ¶ 1). Based on the investigation, HUD determined on July 25, 2007, that

2

there was no reasonable cause to believe that Sections 804(b) and 818 of the 1988 Fair Housing Amendments Act were violated (Docket No.12, Exhibit 2, p. 7, ¶ 2).

Plaintiff filed this civil action on August 30, 2007, alleging wrongful eviction, retaliation, negligent hiring, gender discrimination and due process violations (Docket Nos. 1 & 28). In her Amended Complaint, Plaintiff alleged that she experienced severe emotional distress and anxiety as a result of Defendant's (1) discriminatory conduct based on gender, (2) improper seizure of her personal property with deliberate indifference, (3) wrongful eviction, (4) retaliatory acts, (4) negligence in hiring Emzie Wilson and (5) conversion of her seized property. Defendant filed a combined Motion to Dismiss under FED. R. CIV. P. 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim) (Docket No. 29).

## **MOTION TO DISMISS STANDARD**

When considering a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1), the party asserting jurisdiction bears the burden of establishing that subject matter jurisdiction exists. *Grewal v. Ashcroft.* 301 F. Supp.2d 692, 694 -695 (N. D. Ohio 2004) (*citing Moir v. Greater Cleveland Regional Transit Authority,* 895 F.2d 266, 269 (6th Cir. 1990)). RULE 12(b)(1) motions to dismiss based upon subject matter jurisdiction generally consist of two types: facial attacks and factual attacks. *Id.* (*citing Ohio National Life Insurance Company v. United States,* 922 F.2d 320, 325 (6th Cir. 1990)). Facial attacks to subject matter jurisdiction merely question the sufficiency of the pleadings, and courts should apply the RULE 12(b)(6) standard in considering them. *Id.* In such a case, courts should accept the allegations in the complaint as true and construe them in a light most favorable to the nonmoving party. *Id.* (*citing United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir. 1994) *cert denied*, 15 S. Ct. 188 (1994) (*citing Scheuer v. Rhodes,* 94 S. Ct. 1683, 1686-1687 (1974)). Factual attacks contest the factual predicate for subject matter jurisdiction. *Id.* In such a case, no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the

3

evidence and satisfy itself as to the existence of its power to hear the case. *Id*. (*citing Ritchie,* 15 F. 3d at 598; *Scheuer,* 94 S. Ct. at 1685-1686 and *Moir*, 895 F.2d at 269).

To survive a motion to dismiss under Rule 12(b)(6 ), a complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *Mezibov v. Allen,* 411 F.3d 712, 716 (6th Cir. 2005) (*citing Scheid v. Fanny Farmer Candy Shops, Incorporated,* 859 F.2d 434, 436 (6th Cir. 1988)). Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss. *Id.* (*citing Jackson v. Heh,* 215 F.3d 1326 (Table), 2000 WL 761807 at *2 (6th Cir. 2000) (*citing Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995)).

## **DISCUSSION**

In the Motion to Dismiss, Defendant asserts several reasons why this case should be dismissed. First, Plaintiff failed to demonstrate the existence of subject matter jurisdiction. Second, even if this Court has subject matter jurisdiction, Plaintiff's claim for administrative review was untimely filed. Third, a housing authority is not a federal agency subject to review under the Administrative Procedure Act. Fourth, Plaintiff's first cause of action–unconstitutional seizure and deprivation of rights–does not identify, with particularity, a private right. Fifth, Defendant has no civil liability for unauthorized, independent acts of its contractors. Sixth, Plaintiff fails to state a claim for gender discrimination. Seventh, since this Court lacks jurisdiction over Plaintiff's federal claims, the Court cannot retain supplemental jurisdiction over her state claims.

1.  Subject Matter Jurisdiction

Defendant argues that Plaintiff failed to identify the state and federal laws that were allegedly violated. Plaintiff has not stated adequate jurisdictional facts to demonstrate subject matter jurisdiction.

District courts have federal question jurisdiction of cases "arising under the Constitution, laws or treaties of the United States." *American Federation of Television and Radio Artists, AFL-CIO v. WJBK-TV (New World Communications of Detroit, Incorporated*) 164 F.3d 1004, 1007 (6th Cir. 1999) (*citing* 28 U.S.C. § 1331).  A case arises under federal law when an issue of federal law appears on the face of a well-pled complaint.  *Id.* (*citing Metropolitan Life Insurance Company v. Taylor,* 107 S. Ct. 1542, 1546 (1987)). "Merely referring to a federal statute, however, does not establish federal jurisdiction if the dispute does not involve 'a substantial question of federal law.' " *Id.* (*citing Ford v. Hamilton Investments, Incorporated,* 29 F.3d 255, 258 (6th Cir. 1994) (*citing Franchise Tax Board v. Construction Laborers Vacation Trust,* 103 S. Ct. 2841, 2856 (1983)).  The party seeking to litigate in federal court bears the burden of establishing the existence of federal subject matter jurisdiction.  *McIntire v. Ford Motor Company*, 142 F. Supp.2d 911, 915 (S. D. Ohio 2001) (*citing McNutt v. General Motors Acceptance Corporation of Indiana,* 56 S. Ct. 780, 783 (1936)).

In the Amended Complaint, Plaintiff pleads violations of the Fourth and Fourteenth Amendments of the United States Constitution and federal statutory rights against discrimination which on their face, involve substantial questions of federal law.  Such claims are sufficient to invoke federal question jurisdiction under 28 U. S. C. § 1331.

2. <u>Administrative Review</u>

Defendant contends that Plaintiff availed herself of the administrative process when she obtained a state agency decision addressing issues related to the alleged eviction.  She failed, however, to seek judicial review of such decision within 30 days after the entry of final order by the state agency in the appropriate state court.  She is foreclosed from seeking judicial review in federal court.

Every final order of any administrative officer may be reviewed on appeal by a court of common

pleas, a court of appeals or the supreme court, whichever has jurisdiction. OHIO REV. CODE § 2505.03(A) (Thomson Reuters/West 2008). After the entry of a final order of an administrative officer, agency, board, department, tribunal, commission, or other instrumentality, the period of time within which the appeal shall be perfected, unless otherwise provided by law, is thirty days. OHIO REV. CODE § 2505.07 (Thomson Reuters/West 2008).

Plaintiff has not presented an administrative decision to this Court for review. Even if Plaintiff perfected a timely appeal of the administrative decision in this Court, a federal court does not have jurisdiction to review any administrative decisions of the state created agency claims. This Court does lack jurisdiction to review issues arising from the administrative decisions, if any, rendered by Defendant.

3. Administrative Procedure Act

Defendant contends that it is not a federal agency; therefore, review under the Administrative Procedure Act is prohibited.

The Administrative Procedure Act allows judicial review for persons suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action. *Southwest Williamson County Community Association v. Slater*, 173 F. 3d 1033, 1035 (6th Cir. 1999) (*citing* 5 U. S. C. § 702). Agency is defined as "each authority of the Government of the United States . . . " *Id.* (*citing* 5 U. S. C. § 701(b)(1)). By its own terms, the Administrative Procedure Act does not apply to state agencies. *Id.*

Defendant is an agency created pursuant to Ohio law and by definition, a state agency. Plaintiff's claims are not subject to review under the Administrative Procedure Act.

4. A Private Right of Action

Defendant alleged that Plaintiff failed to demonstrate that her first cause of action–unconstitutional seizure and deprivation/destruction of Plaintiff's personal property under the Fourth Amendment to the

6

United States Constitution--created a private right of action. Defendant maintains that Plaintiff has no enforceable Section 1983 right of action for her first cause of action under pertinent portions of the Fair Housing Act.

It is settled that "[42 U.S.C.] § 1983 is available as a remedy for violations of federal statutes as well as for constitutional violations." *Teen Ranch, Incorporated v. Udow,* 479 F.3d 403, 411 (6th Cir. 2007) *cert. denied*, 128 S. Ct. 653 (2007) (*citing Suter v. Artist M.,* 112 S.Ct. 1360, 1366 (1992) (*citing Maine v. Thiboutot,* 100 S.Ct. 2502 (1980)). However, "§ 1983 does not provide an avenue for relief every time a state actor violates a federal law." *Id.* (*citing City of Rancho Palos Verdes v. Abrams,* 125 S.Ct. 1453, 1457 (2005)). Section 1983 is not available to enforce a violation of a federal statute where Congress has foreclosed such enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of Section 1983. *Id.* (*citing Suter,* 112 S.Ct. at 1366) (*quoting Wright v. City of Roanoke Redevelopment & Housing Authority,* 107 S.Ct. 766, 770 (1987)).

To sustain a Section 1983 action, the plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he or she belongs. *Id.* (*citing Abrams,* 125 S.Ct. at 1458). "Even after this showing, ... [t]he defendant may defeat this presumption by demonstrating that Congress did not intend that remedy for a newly created right." *Id.* "[C]ongressional intent may be found directly in the statute creating the right, or inferred from the statute's creation of a 'comprehensive enforcement scheme that is incompatible with individual enforcement under § 1983.' " *Id.* (*quoting Blessing v. Freestone,* 117 S.Ct. 1353, 1359 (1997)). Moreover, "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983." *Id.* (*citing Abrams*, 125 S.Ct. at 1458). However, "[t]he

7

ordinary inference that the remedy provided in the statute is exclusive can surely be overcome by textual indication, express or implicit, that the remedy is to complement, rather than supplant, § 1983." *Id.* (*citing Abrams*, 125 S.Ct. at 1459). The party seeking to enforce the federal statutory right bears the burden of demonstrating that Congress intended to create the private federal remedy sought. *Id.* (*citing Suter,* 112 S.Ct. at 1370).

The Magistrate finds that the context of the overall Fair Housing statute regulating a state agency's duties is too far removed from Plaintiff's entitlement to privileges under the Fourth Amendment that are enforceable under Section 1983. The Fourth Amendment provides that the federal government shall not violate the right of people to be secure from unreasonable searches and seizures. Congress authorized the Secretary of HUD to effectuate the goal of eliminating discrimination in housing. The statutory language of the Fair Housing Act fails to express a Congressional intent to create new federal rights protecting a HUD beneficiary from violations of the Fourth Amendment by a state agency. Nothing in the provisions of the Act or structure of the statute establishes a clear intent by Congress to create a privately enforceable right in federal court to obtain seized property from a state agency. Accordingly, Plaintiff failed to state a claim for relief for the seizure and/or destruction of her personal property under the Fourth Amendment to the United States Constitution.

5. Liability for Independent Contractor

Defendant claims that there can be no civil liability for the criminal conduct of an independent contractor; therefore, Defendant contends that it is not responsible for Emzie Wilson's inappropriate comments and alleged sexual assault.

An employer of an independent contractor generally is not liable for the negligent acts of the independent contractor. *Sullivan v. Oregon Ford*, *Incorporated*, 552 F. Supp. 2d 681, 685 (N. D. Ohio

2008) (*citing Pusey v. Bator,* 94 Ohio St.3d 275, 278, 762 N.E.2d 968 (2002)). Likewise, Ohio subscribes to the general rule of law that an employer is not liable for the torts of an independent contractor. *Cole v. American Community Services*, 2006 WL 2987815, *4 (S. D. Ohio 2006). Ohio recognizes three exceptions to the general rule: (1) an employer may be liable for its own negligence in selecting or retaining an independent contractor; (2) an employer may be held vicariously liable for the negligence of an independent contractor when the independent contractor was performing a non-delegable duty; and, (3) an employer may be held vicariously liable for the torts of an independent contractor under an agency by estoppel theory. *Id.* at *4, fn. 5.

It is undisputed that Emzie Wilson was an independent contractor and that Defendant was responsible for providing workers to fulfill various duties such as performing electrical work (Docket No. 28, ¶ 9). Generally Defendant is not liable for the torts perpetrated by the independent contractor.

Plaintiff also alleges that Defendant is liable for its own negligence in hiring Emzie Wilson to perform the electrical work. Plaintiff equates a conviction for sexual assault with a failure to exercise reasonable care in the selection process.

Ohio recognizes that an employer may be liable for injuries resulting from its own negligence in selecting or training an independent contractor. *Sullivan v. Oregon Ford, Incorporated*, 552 F. Supp.2d 681, 685 (N. D. Ohio 2008) (*citing Albain v. Flower Hosp.,* 50 Ohio St.3d 251, 257-58, 553 N.E.2d 1038 (1990)). The Magistrate does not find that Emzie Wilson's adjudication of guilt raises a presumption that Defendant was negligent in selecting him as a contractor. Plaintiff's only inferential allegation is insufficient to state a viable legal claim or defend against the motion to dismiss. According, Plaintiff's claim must be dismissed.

6.      Gender Discrimination Claim

9

Defendant appropriately argues that 42 U. S. C § 3604 does not create a cause of action for gender discrimination in failing to provide a transfer, effectuating an eviction or making sexually inappropriate comments.  Under Section 3604, it is unlawful to refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of sex or to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of sex. 42 U.S.C. § 3604 (a) and (b) (Thomson Reuters/West 2008).

Plaintiff has failed to state a claim under 42 U. S. C. § 3604.  In paragraph 53 of Plaintiff's Amended Complaint, Plaintiff claims that Defendant discriminated against her based on her gender in violation of federal law when its officials, employees and/or agents made sexually inappropriate comments in reference to Plaintiff, sexually assaulted Plaintiff, wrongfully evicted Plaintiff and failed to provide a transfer to Plaintiff to another housing unit after the original unit became uninhabitable through no fault on Plaintiff's behalf.  These claims do not state a cause of action for which this Court is authorized to provide relief for discrimination under 42 U. S. C. § 3604.

7.  Supplemental Jurisdiction

Defendant argues that since Plaintiff's federal claims fail as a matter of law, this Court should not retain jurisdiction over Plaintiff's state law claims.  The Magistrate acknowledges that this district court can exercise its supplemental jurisdiction to reach Plaintiff's specifically pled state law claims that are related to her federal claims.  Since she failed to state a claim under Section 1983 for violations of the Fourth Amendment or gender discrimination, a determination must be made to exercise supplemental jurisdiction to resolve Plaintiff's pending state law claims.

A district court has original jurisdiction over a plaintiff's federal law claims and accordingly can

exercise supplemental jurisdiction over plaintiffs' state law claims under 28 U.S.C. § 1367(a).  *Robert N. Clemens Trust v. Morgan Stanley DW, Incorporated*, 485 F.3d 840, 853 (6th Cir. 2007).  Under 28 U.S.C. § 1367(c)(3), it was within the district court's discretion to decline to exercise jurisdiction over Plaintiffs' state law claims once it dismissed the federal claims.  *Id.*  In *Carnegie-Mellon University v. Cohill,* 108 S.Ct. 614, 619 fn. 7 (1988), the Supreme Court explained that in a usual case, if all federal law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine–judicial economy, convenience, fairness and comity--will typically point toward declining to exercise jurisdiction over the remaining state law claims.  *Id.* (*see also Taylor v. First of America Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) ("Generally, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.") (*quoting United Mine Workers v. Gibbs,* 86 S.Ct. 1130, 1139 (1966) (internal quotation marks omitted)).

The Magistrate declines to accept supplemental jurisdiction since the federal claims cannot go forward to trial, substantial resources have not been expended in completing discovery, the statute of limitations has run and furthermore, disposition of the case relies upon Ohio law.

## CONCLUSION

For the reasons set forth in this Memorandum Decision and Order, the Magistrate grants Defendant's Motion to Dismiss, and this case is dismissed.

IT IS SO ORDERED.

Vernelis K. Armstrong  
United States Magistrate Judge

Date:   August 29, 2008